Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2020 | DATE | NOV. 2, 2000 |
| CASE TITLE | CONNIE CARDENAS v. CLASSIC CHEVROLET, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Plaintiff's motion for class certification [13-1] is granted. A class of plaintiffs is certified. (See Opinion for particulars.) Defendant's motion to dismiss [8-1] is denied. Defendant shall answer the complaint by November 24, 2000. Status hearing is set for November 22, 2000 at 11:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | NOV 0 3 2000 date docketed | 16 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 NOV -2 PM 5:43 | Nov. 2, 2000 date mailed notice | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | MQM mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONNIE CARDENAS,           )
                           )
         Plaintiff,        )
                           )
    v.                     )    No. 00 C 2020
                           )
CLASSIC CHEVROLET, INC.,   )
                           )
         Defendant.        )

DOCKETED
NOV 0 3 2000

## MEMORANDUM OPINION AND ORDER

In this putative class action, named plaintiff Connie Cardenas alleges that she purchased an automobile from defendant Classic Chevrolet, Inc. Defendant provided Cardenas with a combination retail installment contract and Truth in Lending Act ("TILA") disclosure statement. The TILA disclosure disclosed an annual percentage rate of 12.50% and a finance charge of $1,509.33. The TILA disclosure also states the down payment is $2,000.00 and that the amount financed is $7,386.99.[1] Assuming the down payment did not change (and apparently it did not), the TILA disclosure is accurate as stated and plaintiff does not contend otherwise. Plaintiff, however, contends that TILA is

---

[1] The photocopy of the agreement that is attached to the complaint is a poor reproduction. This is what the numbers appear to be.

violated because a provision contained in a rider to the contract makes the numbers an estimate. TILA requires that any estimated disclosure be clearly labeled as an estimate. See 12 C.F.R. § 226.17(c)(2)(i). Plaintiff's TILA disclosure was not labeled as an estimate.

In a rider to the contract, defendant disclosed that it intended to assign the installment contract to a sales finance agency of its choice. The rider states that, as an inducement to defendant making immediate delivery prior to verifying the information in plaintiff's credit application, defendant has two conditions under which it may cancel the contract, with plaintiff thereafter being required to return the automobile within one day. If any information in plaintiff's credit application was found to be false or inaccurate, defendant, at its option, could cancel the contract. Even if the credit information is accurate, defendant had the option to cancel if defendant is unable to assign the installment contract to a sales finance agency. Neither the rider, nor any other part of the parties' contract, contained any provision under which plaintiff could cancel the contract.

It is clause (2) of the following provision which plaintiff contends makes the TILA disclosure an estimate:

> Buyer's [sic] specifically agree that as a
> condition of receiving financing for the purchase
> of the subject automobile, that Buyer's [sic]

> will upon request of CLASSIC CHEVROLET, INC.
> provide:
> (1) A Co-signor or Guarantor, with credit
> acceptable to CLASSIC CHEVROLET, INC.
> (2) Such additional sum of money as a down
> payment as requested by CLASSIC CHEVROLET, INC.
> to reasonably secure the loan.

According to plaintiff, because the possibility existed of changing the down payment, the TILA disclosure amounts could change and therefore the disclosure actually made should be considered an estimate. There is no contention that a request to change the down payment was ever made nor is there any contention that the contract was subsequently canceled. The only issue is whether the disclosure violated § 226.17(c)(2)(i) because the disclosure was not labeled as an estimate.

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant moves to dismiss the complaint. Subsequent to the filing of defendant's motion, named plaintiff moved to certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3). Generally, the issue of class certification should be resolved prior to ruling on the merits of the case. <u>Mira v. Nuclear Measurements Corp.</u>, 107 F.3d 466, 474-75 (7th Cir. 1997). Therefore, class certification will be considered first.[2] Plaintiff seeks to

---

[2]At the time the motion for class certification was submitted, defendant did not express an opinion as to whether certification was appropriate. The motion was taken under advisement without any briefing schedule being set. To the extent that defendant objects to class certification, it should

certify a class of persons who (a) on or after April 3, 1999; (b) signed a retail installment contract to purchase a vehicle from defendant; (c) for which a TILA disclosure was made; (d) the contract included the same rider as in plaintiff's contract; and (e) the TILA disclosure was not labeled as an estimate.

This is an appropriate case for class certification. The prerequisites of Fed. R. Civ. P. 23(a) are all satisfied. Information disclosed in discovery indicates that the class will include more than 500 persons. Therefore numerosity is satisfied. See id. 23(a)(1). Rule 23(a)(2) is satisfied in that the common question exists of whether the down payment provision makes the TILA disclosure an estimate. Rule 23(a)(3) is satisfied in that there is nothing to indicate that plaintiff's claim is any different from those of other members of the class. Rule 23(a)(4) is satisfied in that class counsel are experienced and qualified class action litigators, with much experience litigating TILA and other consumer issues. There is nothing to indicate that named plaintiff has a conflict with the class or is otherwise an inadequate representative.

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions and a class action be superior to other available methods for the fair and efficient

---

file a motion for reconsideration within 10 days.

adjudication of the controversy. Here, the common legal question of whether TILA's estimate provision was violated should predominate. Individual factual issues should not exist, except possibly, that persons who actually had their down payments increased or contracts canceled perhaps should be placed in separate categories for relief. Still the common legal question should predominate. Cf. Williams v. Rizza Chevrolet-Geo, Inc., 2000 WL 263731 *3 (N.D. Ill. March 6, 2000). In light of the common legal issue, limited factual issues, and the likely small amount of damages per individual, this is a case where a class action is the superior form of adjudication. Cf. id.

This case will be certified as a class action.

TILA requires that all retail installment contracts provide accurate disclosures. Janikowski v. Lynch Ford, Inc., 210 F.3d 765, 767 (7th Cir. 2000). The mandatory TILA disclosures "must be given before the 'consumer becomes contractually obligated on a credit transaction.'" Id. (quoting 15 U.S.C. § 1638(c); 12 C.F.R. § 226.2(a)(13)). The applicable regulations provide in part:

> (c) <u>Basis of disclosures and use of estimates</u>.
> (1) The disclosures shall reflect the terms of the legal obligation between the parties.
> (2)(i) If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer,

and shall state clearly that the disclosure is an estimate.

12 C.F.R. § 226.17(c).

In Janikowski, accurate TILA disclosures were made based on the interest rate stated in the retail installment contract. However, when financing could not be found at that rate, new and accurate TILA disclosures were made based on a higher rate. The Seventh Circuit held that the initial disclosures were not an estimate under the TILA regulations. Id., 210 F.3d at 768. Instead, the buyer had entered into two different contracts, both of which contained a promised interest rate. This was so because the contract contained a provision that either side could cancel the contract if financing could not be obtained in accordance with the stated financing terms. When financing could not be obtained at the lower rate, the contract was canceled and the parties entered into a new contract at the higher rate.

> . . . the 5.9% APR was not an estimate—it was the contractual rate, albeit a condition to the parties' duty to perform. It was an accurate disclosure for that contract, and the 5.9% rate did not and could not vary under its terms. If the financing condition had been satisfied, Janikowski would be able and obligated to purchase the car at 5.9%. However, when Janikowski did not receive approval of financing at 5.9%, she could have canceled the contract and refused to purchase the Escort. Either way, the disclosed rate was a set rate, not an estimate.

Id.

Leguillou v. Lynch Ford, Inc., 2000 WL 198796 (N.D. Ill. Feb. 14, 2000), involved a contract similar to that in Janikowski. In Leguillou, either side could cancel the contract if financing could not be obtained at the stated rate. When financing could not be obtained at the 11.90% rate stated in the contract, the dealer offered to finance the purchase on different terms. When Leguillou did not agree to different terms, the dealer demanded that Leguillou return the vehicle. See Leguillou, 2000 WL 198796 at *1-2. Like Janikowski, there was a pertinent contract provision that allowed either party to the contract to cancel if financing could not be obtained on the stated terms. The court held that the TILA disclosures were not inaccurate, reasoning as follows:

> Plaintiff entered into a fully binding contract with Lynch Ford. A condition subsequent was used to cancel the contract. This set of facts does not undermine the validity of the original TILA disclosures. Accurate disclosures do not become violations because they are rendered inaccurate by subsequent events. "If information disclosed in accordance with [TILA] is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part." 15 U.S.C. § 1634. Since the disclosure was accurate when the contract was completed, the lack of available financing at 11.9% does not render the disclosures actionable.

Leguillou, 2000 WL 198796 at *4.

Jasper v. New Rogers Pontiac, Inc., 1999 WL 1024522 (N.D. Ill. Nov. 5, 1999), involved essentially the same factual situation as Leguillou. The parties' contract became null and void if financing could not be obtained at the stated interest rate. When financing could not be obtained at that rate, the dealer canceled the contract and repossessed the vehicle. See Jasper, 1999 WL 1024522 at *1. The court reasoned as follows in finding no TILA violation:

> Jasper seems to reason that New Rogers Pontiac could not make any accurate disclosures without knowing whether it could ultimately assign the Contract. Thus, according to Jasper, Regulation Z required New Rogers Pontiac to label the disclosures as estimates.
> However, New Rogers Pontiac's ability to void the Contract between Jasper and New Rogers Pontiac does not affect the substance of the disclosures but affects the timing of the Contract's consummation. See Graves v. Tru-Link Fence Co., 905 F. Supp. 515, 519-20 (N.D. Ill. 1995). "Consummation " of a contract occurs when a consumer becomes contractually obligated on a credit transaction. See 12 C.F.R. § 226.2(13). If the ability to assign the Contract was a condition precedent, then the Contract was never consummated and a binding obligation never formed. See id. at 519. However, if it was a condition subsequent, a binding obligation was created, which could then be discharged upon the failure to assign the Contract. See id. at 520.
> Thus, New Rogers Pontiac's ability to void the Contract is significant to Jasper as a condition subsequent. With it, Jasper can support his allegation that he consummated the Contract on November 28, 1998 when he signed the Contract, paid the down payment, and traded in his old car, rather than when and if New Rogers Pontiac assigned his Contract. So, New Rogers had an obligation to make its disclosures before

>     Jasper signed the Contract on November 28, 1998.
>     12 C.F.R. § 226.17(b). New Rogers Pontiac did
>     so.
>         The fact that the entire Contract was later
>     voided upon the occurrence of the condition
>     subsequent does not affect the accuracy of the
>     disclosures made on November 28, 1998. Jasper
>     only takes issue with the voidability of the
>     Contract and nowhere alleges that the disclosures
>     were otherwise inaccurate. However, the
>     voidability of the Contract alone does not make
>     the disclosures inaccurate so as to necessitate
>     their being labeled as estimates.

Id. at *2-3.

Janikowski, Leguillou, and Jasper are all distinguishable from the present case. Those cases all involved clauses that voided the contract in its entirety, with the possibility that the parties could thereafter enter into a new contract as they did in Janikowski.³ As is expressly stated in Leguillou and Jasper, the type of provision considered in these three cases was a condition subsequent. "A condition subsequent is 'an event which, if it occurs, discharges preexisting contractual liability.'" Graves, 905 F. Supp. at 520 (quoting Vuagniaux v. Korte, 273 Ill. App. 3d 305, 652 N.E.2d 840, 842 (5th Dist. 1995)). See also Jasper, 1999 WL 1024522 at *2; Black's Law

---

³Fogle v. William Chevrolet/Geo, Inc., 2000 WL 1129983 (N.D. Ill. Aug. 9, 2000), also involved the same situation as Janikowski, a cancellation clause if financing was not obtained and the parties agreeing to a new contract with a higher interest rate. See Fogle, 2000 WL 1129983 at *1 (grey car). Fogle followed Janikowski in holding that no TILA violation had occurred. Fogle, 2000 WL 1129983 at *3-4.

Dictionary 289 (7th ed. 1999). Although Cardenas's contract contained two such conditions subsequent which would have allowed Classic Chevrolet to cancel the contract, those are not the provisions that Cardenas relies upon in contending the TILA disclosure was an estimate. Instead, Cardenas points to a provision that allows Classic to modify the amount of the down payment, not cancel the contract. Once Cardenas signed the contract, she was bound to comply with any reasonable increase of the down payment; an increase of the down payment would not have been a basis for her canceling the contract. A fully enforceable contract with an indefinite down payment was in place and fully enforceable upon being signed. The clause permitting modification of the down payment is not a condition subsequent. Therefore, it is unlike the provisions addressed in Janikowski, Leguillou, and Jasper, where the original contract was voided and therefore the TILA disclosure as to the original contract was not inaccurate.

Under the contract signed by Cardenas, the down payment could change (within limits of reasonableness) without any need to modify the contract and Cardenas would have been obliged to pay the down payment, purchase the vehicle, and make payments on the loan. Since, under the terms of the contract as signed, the down payment amount could vary, the various numbers that make up the TILA disclosure could also vary. Therefore, the TILA

disclosure should have been accompanied by a clear statement to the effect that the amounts disclosed were an estimate based on the assumption that the down payment would be $2,000.00 and the amount financed $7,386.99, with the possibility that the down payment and amount financed could be unilaterally changed by Classic Chevrolet in accordance with the terms of the contract. Such a disclosure would accurately "reflect the terms of the legal obligation between the parties." 12 C.F.R. § 226.17(c)(1).

TILA provides: "If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part." 15 U.S.C. § 1634. The applicable regulations track this language. See 12 C.F.R. § 226.17(e). An example of a subsequent event provided in the Official Staff Commentary to § 226.17(e) is "when the consumer fails to fulfill a prior commitment to keep the collateral insured and the creditor then provides the coverage and charges the consumer for it." 12 C.F.R. Pt. 226, Supp. I, § 17(e), cmt. 1. Other examples of subsequent events that would fall under this provision are "late payment charges, Christmas deferrals or prepayment of the obligation." Begala v. PNC Bank, Ohio, N.A., 163 F.3d 948, 951 (6th Cir. 1998), cert. denied, 120 S. Ct. 166 (1999) (quoting Bone v. Hibernia Bank, 493 F.2d 135,

140-41 (9th Cir. 1974)). Cf. Kedziora v. Citicorp National Services, Inc., 901 F. Supp. 1321, 1327 (N.D. Ill. 1995), aff'd sub nom., Channell v. Citicorp National Services, Inc., 89 F.3d 379 (7th Cir. 1996) (quoting 12 C.F.R. Pt. 213, Supp. I, § 4(e), cmt. 1) (change from a monthly to weekly payment schedule; addition of insurance or a security interest because lessee has not performed an obligation; increase of official fees or taxes; late delivery caused by a strike). Lequillou, 2000 WL 198796 at *4, indicates that cancellation of a contract because of the occurrence of a condition subsequent is a subsequent event under § 1634. Cardenas's situation is different. From its inception, her contract with Classic Chevrolet contained a clause that left the down payment indefinite. Therefore, at the time of consummation, without any subsequent act or occurrence and without the need for a new agreement, the amount being financed was indefinite. The amount financed is a term that goes to the heart of determining an accurate TILA disclosure. Since the amount to be financed was indefinite, Classic Chevrolet should have labeled the amount financed (and related numbers depending on a definite amount financed) as estimates. On the facts alleged in the complaint, Classic Chevrolet's failure to do so constitutes a violation of TILA.

The motion to dismiss will be denied. Pending resolution of the motion for class certification and motion to dismiss,

plaintiff's motion for partial summary judgment as to liability was held in abeyance. Class certification having been granted and the motion to dismiss having been denied, it would now be appropriate to consider summary judgment. However, before proceeding to brief that motion, the parties will be provided with the opportunity to discuss settlement. Also, the parties must submit a proposed notice to the class.

Within one week of today's order, the parties shall meet to discuss the possibility of settlement. A status hearing to report on the possibility of settlement is set for November 22, 2000 at 11:00 a.m. If, upon meeting, it appears that settlement is unlikely, plaintiff shall promptly file its proposed notice to the class. Otherwise, at the November 22 status hearing, a schedule will be set for submitting a proposed notice and for any further procedures in the case.

IT IS THEREFORE ORDERED that:

(1) Plaintiff's motion for class certification [13-1] is granted. A class of plaintiffs is certified consisting of persons who (a) on or after April 3, 1999; (b) signed a retail installment contract to purchase a vehicle from defendant Classic Chevrolet, Inc.; and (c) the retail installment contract included (i) a Truth in Lending Act disclosure, (ii) the disclosure was not labeled as an estimate, and (iii) the contract included a provision that, as a condition of receiving financing, the buyer

would, upon request of Classic Chevrolet, Inc., provide such additional sum or money as a down payment as requested by Classic Chevrolet, Inc. to reasonably secure the loan.

(2) Defendant's motion to dismiss [8-1] is denied. Defendant shall answer the complaint by November 24, 2000.

(3) Status hearing is set for November 22, 2000 at 11:00 a.m.

ENTER:

*[signature: William T. Hart]*
UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER 2, 2000